UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-00501-CR-HUCK/MCALILEY

UNITED STATES OF AMERICA

Plaintiff,

vs.

ELSA C. HINESTROSA,

Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before this Court are several motions: (1) Motion for Reconsideration of Order Requiring the Return of Forfeited Currency [DE 56], filed by Plaintiff, United States ("United States" or the "government"); (2) Motion to Expunge Record [DE 57], filed by Defendant, Elsa Hinestrosa ("Hinestrosa"); and (3) Motion for Attorneys Fees [DE 63], filed by Hinestrosa. For the reasons set forth below, the Court recommends that the Motion for Reconsideration be granted, the Motions for Expungement and for Attorneys' Fees be denied.

## I. BACKGROUND[1]

In December, 1996, Hinestrosa was approached by customs agents in a Miami restaurant and taken to the U.S. Customs office. (*See* Hinestrosa's Petition for Attorney's

_____

[1] Unless otherwise indicated, the facts are drawn from the opinion of the Eleventh Circuit Court of Appeals, affirming on direct appeal the trial court's order dismissing the indictment against Hinestrosa: *United States v. Hinestrosa*, D.C. Docket No. 99-00501-CR-NCR (11th Cir. July 31, 2010).

Fees ("*Pet. Fees*") [DE 63] at p. 2).  Agents interrogated her for several hours at the office and later at Hinestrosa's home, without advising her of her *Miranda* rights.  Additionally, the agents removed files and documents from Hinestrosa's home, but did not compile an accurate inventory of the items taken.  At the same time, the government seized three bank accounts belonging to Hinestrosa and her husband, Alberto Gutierrez, for a total of $141,535.61.[2]  Following the interrogation and seizure, the government waited almost four years, until April, 2000, to arrest Hinestrosa.

Hinestrosa was indicted on multiple counts of conspiring to attempt and attempting to cause a financial institution to fail to file a currency transaction report (CTR) in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(c).  (*See* Government's Response to Hinestrosa's Motion for Attorney's Fees ("*Resp. to Mot. for Fees*") [DE 64] at p. 2).  Hinestrosa moved to suppress statements made during the interrogation, as well as any evidence obtained as a result of those statements.  Hinestrosa alleged that while she was in custody, the agents told her that if she cooperated, the government would not prosecute her, and would return the monies seized.  During a hearing on the motion to suppress, agents were asked if they had made such promises to Hinestrosa, and they denied this.  The agents' testimony was impeached, however, by a recording Hinestrosa had made of a conversation with Special Agent William Parks, in which Parks told Hinestrosa that the he and the other agents would

---

[2] Specifically, the government seized two accounts in Hinestrosa's name in the amounts of $54,260.27 and $51,397.47, and one account in Gutierrez's name in the amount of $35,877.87.  *See* Hinestrosa's Motion for Return of Property (" Mot. Return of Property") [DE 51] at p. 1; Government's Motion for Reconsideration ("Mot. Reconsideration") [DE 56] at pp. 1,7).

not be able to fulfill the promises that she would not be indicted, and that her money would be returned.  The district court granted the motion to suppress.

Hinestrosa then filed a motion to compel or, in the alternative, to dismiss the indictment based on the government's failure to produce in discovery the business records that had been seized from Hinestrosa's home in 1996.  The district court denied the motion. Hinestrosa then filed a supplemental motion to dismiss the indictment, arguing that the police misconduct, together with the government's failure to produce the records, prejudiced her ability to defend against the charges, and that this could be remedied only by dismissal of those charges.

The district court heard argument on the motion, and asked the government what evidence it intended to present at trial, and the government advised that it would not call Special Agent Parks as a witness.  The district court concluded that Hinestrosa would be prejudiced by the government's decision not to call Parks as a witness, and that the police misconduct in the earlier stages of the case warranted dismissal of the indictment.[3]  The government appealed the dismissal of the indictment; that decision was affirmed by the Eleventh Circuit Court of Appeals, over a strong dissent.

---

[3] After hearing argument on the motion to dismiss, the district judge summed up the proceeding as follows: "This smells.  All the egregious conduct of the government agents on December 13, 1996, to shield him from cross examination by not calling him and letting the jury hear how bad it really was reeks, not just smells.  Sure, Mr. Diaz could call him but.  That is not the same thing.  And that also shifts the burden of persuasion to the defendant which is not our system of justice.  Motion to dismiss is granted."  (*See* Transcript of December 4, 2000 Hearing on Hinestrosa's Motion to Compel or Dismiss ("*Dec. 4, 2000 Hearing*") [DE 48] at 28-29.

Following the dismissal of the indictment, and before the Eleventh Circuit's decision, Hinestrosa filed a motion for return of property. (*See Mot. Return of Property* [DE 51]). In the Motion, Hinestrosa stated as follows:

> Rule 41(e) of the Federal Rules of Criminal Procedure provides that a person aggrieved by an unlawful search and seizure may move the district court for the return of property on the grounds that the person is entitled to lawful possession of the property.
>
> The Defendant in this cause, ELSA HINESTROSA, was found by this Honorable Court to have been aggrieved by an unlawful search and seizure. HINESTROSA is therefore entitled to the return of all property wrongfully taken from her by the government. Specifically, HINESTROSA is entitled to the return of all currency unlawfully seized by the government from her personal and business bank accounts totaling $141,535.61, plus interest as of the date such funds were unlawfully seized.

(*Id*. at p. 2). The government did not file a response, and the district court granted the motion, finding that the motion could be granted by default given the government's failure to respond, and should be granted on the merits because "the motion is well founded on the merits as all charges against the defendants have been dismissed." (Order on Motion for Return of Property ("*Return of Property Order*") [DE 55]). The district court thus ordered the government to return to Hinestrosa $141,535.61, plus interest.

A week later, the government moved for reconsideration of the Order, arguing several reasons why the district court should reverse its decision. (*See Mot. Reconsideration* [DE 56]). First, the government noted that it had never received a copy of the motion, and did not know of its existence until it received the Order granting the motion. (*See id*. at p. 2). The government also claimed that because the case was on appeal, the district court lacked

4

jurisdiction to enter the order.  (*See id*. at p. 3).  The government further argued that the property had been administratively forfeited, and that a Rule 41 motion is not a vehicle to obtain the return of property that has been administratively forfeited.  (*See id*.).  Finally, the government argued that the motion itself was not well-founded on the merits, because the seizure was lawful, having taken place before any of police misconduct occurred.  (*See id*. at p. 6).

Shortly thereafter, Hinestrosa filed a motion to have her criminal record expunged. (*See* Motion to Expunge Criminal Record ("*Mot. Expunge*") [DE 57]).  Hinestrosa noted that all charges against her had been dismissed, but that she was having difficulty obtaining a job because of the record of those charges.  (*See id*. at pp. 1-2).

Hinestrosa also filed a petition for attorneys' fees under the Hyde Amendment, 18 U.S.C. § 3006A.  (*See Pet. Fees* [DE 63]).  Hinestrosa argued that the government's case against her was baseless and malicious, and that the government should be ordered to pay her attorneys' fees.  (*See id*.  at pp. 5-6).

The district court did not rule on the government's motion for reconsideration, or on Hinestrosa's motions for expungement or attorneys' fees.  Several years passed, and the presiding district judge, the Honorable Norman C. Roettger, died.  Several more years passed, and finally on September 16, 2009, Hinestrosa moved to reopen the case, and requested that the district court rule on the motions that had been pending for eight years. (*See* Motion to Reopen Case ("*Mot. Reopen*") [DE 71]).  The case was reassigned to the

Honorable Paul C. Huck, who referred the motions to me for a Report and Recommendation.[4] I instructed the parties to file supplements to their original motions, to address any changes in the intervening years in the controlling law or the facts. The parties have filed supplements to some of the motions.[5] I address each motion in turn.

## II. ANALYSIS

### A.    Motion for Reconsideration

The Court first addresses the government's motion for reconsideration of the district court's Order granting Hinestrosa's motion for return of property. The government raises several bases upon which, it claims, the district court's order should be vacated.

First, the government explains that it did not file a response to Hinestrosa's motion because it never received a copy of the motion, and was unaware of its existence until the district court granted the motion. The local rules for this district provide, in relevant part, that "each party opposing a motion shall serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient

---

[4] The motion was originally referred to Magistrate Judge John O'Sullivan [DE 76]. Judge O'Sullivan recused, and the motions were assigned to me [DE 77 & 79].

[5] The parties filed supplemental memoranda as follows: on the Motion for Reconsideration [DE 56], the government filed a Supplemental Memorandum [DE 100], and Hinestrosa filed a Reply to the Supplemental Memorandum [DE 103]; on the Motion to Expunge Criminal Record [DE 57], Hinestrosa filed a notice stating that she would rest on her original motion [DE 99], and the government filed a Supplemental Memorandum on the issue [DE 101]; on the Motion for Attorney's Fees [DE 63], the government filed a Supplemental Memorandum [DE 97], Hinestrosa filed a Supplemental Memorandum [DE 98], and the government filed a Response to Hinestrosa's Supplemental Memorandum [DE 102].

6

cause for granting the motion by default."  Local Rule 7.1(c).[6]

Notably, the rule states that a failure to respond "may" be deemed sufficient cause for granting the motion by default, not that such a failure "shall" be sufficient cause.  As the government points out, it has timely responded to every other motion filed by Hinestrosa, and had every reason to timely respond to this motion, and I find its explanation for its failure to respond credible.  As another division of this court has noted, granting a motion by default may be appropriate where a party simply chose not to respond, or failed to show excusable neglect or good cause for its failure to respond.  *See Tower 1515 Condo. Apts. Ass'n v. QBE Ins. Corp.*, 2006 U.S. Dist. LEXIS 73401 at *3-4 (S.D. Fla. Aug. 23, 2006).  However, where a party, through oversight, failed to file a timely response memorandum, granting a motion by default is rarely appropriate.  *Id*.  This Court finds that the government's failure to respond to the motion is not sufficient cause to grant the motion by default, and thus considers the motion on its merits.[7]

The government persuasively argues that because the property at issue was administratively forfeited, and Hinestrosa chose not to challenge that forfeiture through available procedures, Hinestrosa may not avail herself of a Rule 41(e)[8] motion to recover that

---

[6] The version of Local Rule 7.1 in effect at the time the government's response provided for 10 rather than 14 days.  However, the difference in response time is immaterial here.

[7] The presiding judge apparently held the same belief.  Judge Roettger explained that while the motion for return of property *could* be granted by default based on the government's failure to respond, he granted the motion because he thought it was well-founded on the merits.

[8] Since Hinestrosa filed this motion, the rule was renumbered as Rule 41(g).

property.  The record (in particular, attachments to the government's motion) shows that the government instituted administrative forfeiture proceedings, that it gave Hinestrosa written notice of its intent to forfeit the funds seized from the bank accounts and of the procedures Hinestrosa would have to follow to challenge that forfeiture.  Those documents also show that Hinestrosa chose not to avail herself of those procedures.  (*See Mot. Reconsideration*, Ex. A-G [DE 56] pp. 10-30).[9]

At the time Hinestrosa filed her motion for return of property, the law in this Circuit was clear that Rule 41(e) was not a vehicle for a defendant to seek return of property that had been forfeited; and that law has not changed in the intervening years.  *See United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999) ("A Rule 41(e) motion is unavailable, however, when property is retained pursuant to civil forfeiture instead of for use as evidence."); *see also In re $67,470.00*, 901 F.2d 1540, 1544 n. 4 (11th Cir. 1990) ("Rule 41(e) applies only to criminal proceedings and is expressly inapplicable to forfeiture of property . . . .").  Thus, Hinestrosa's motion, on its face, was without merit.

Apart from Rule 41, this Circuit has recognized that under certain limited circumstances, the district court can exercise its equitable jurisdiction to review an agency's forfeiture decision.  Those circumstances, however, do not exist here.  First, this court may

---

[9] Hinestrosa claims that the government has not proven that notice was given regarding one out of the three seized bank accounts, in seizure number 97-5206-000473.  (*See* Hinestrosa's Reply to the Government's Supplemental Memorandum ("*Reply to Supp. Mot. Reconsideration*") [DE 103] at p. 2].  In fact the documents supplied by the government show that this case was included in correspondence between the parties.  (*See* Declaration of Robert M. DelToro ("*DelToro Decl.*"), and attachments [DE 104], Ex. C, D, at pp. 14-21)

have jurisdiction when the agency has failed to consider a request that it exercise its discretion. *Eubanks*, 169 F.3d at 674; *In re $67,470.00*, 901 F.2d at 1544.  Not having ever challenged the DEA's forfeiture of her property, Hinestrosa can not argue that this justification for the exercise of equitable jurisdiction exists here.  Second, the Eleventh Circuit has recognized that this court might exercise its jurisdiction to review an agency forfeiture "when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice," *Eubanks*, *id.*, or "in exceptional cases where equity demands intervention."  *$67,470.00, id.*  Both cases, however, specifically held such exceptional circumstances do not exist when the petitioner chose to not to challenge the forfeiture with the agency itself.  For example:

> It is inappropriate for a court to exercise equitable jurisdiction to review the merits of a forfeiture matter when the petitioner elected to forego the procedures for pursuing an adequate remedy at law.  Although such jurisdiction might be appropriate when a petitioner's failure to properly seek legal relief resulted from errors of procedure and form or the government's own misconduct, it cannot be used to enable a petitioner to rescind his own choice as to which avenue of relief to pursue.

*$67,470.00*, 901 F.2d at 1545 (citations omitted).  The court made the same observation in *Eubanks*:

> Because Eubanks had the opportunity to dispute the basis for the forfeiture in 1992 and waited five years to do so with no explanation for the delay, the district court could not exercise its equitable jurisdiction to hear his petition at such a late date. The district court did not have jurisdiction to entertain Eubanks' petition.

*Id*. at 674.

Here, Hinestrosa failed to file a claim with the DEA for the property. Her failure to do so makes it inappropriate for this court to exercise equitable jurisdiction to do what she chose to forego.[10]

At the time Judge Roettger granted Hinestrosa's petition for return of property, the law cited here was binding Eleventh Circuit precedent. Judge Roettger granted Hinestrosa's motion without a response from the government, and evidently did not review *Eubanks* or similar authority. Given the state of the law at the time of the proceedings, and the law as it exists today, it is clear that Judge Roettger's decision cannot stand. Accordingly, I recommend that the government's Motion for Reconsideration be granted.

**B.     Motion to Expunge Record**

Hinestrosa seeks have her criminal record expunged. In *Cavett v. Ellis*, 578 F.2d 567 (5th Cir. 1978), the court held that expungement is limited to extremely narrow circumstances:

> the Court's privilege to expunge matters of public record is one of exceedingly narrow scope. Public policy requires here that the retention of records of the arrest and of the subsequent proceedings be left to the discretion of the appropriate authorities. The judicial editing of history is likely to produce a greater harm than that sought to be corrected.

*Id*. at 568, (quoting *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir. 1972) (citations

---

[10] The *$67,470.00* Court did note that jurisdiction might be appropriate where the government conduct caused the petitioner to fail to seek proper legal relief. There is no evidence, however, that that happened here. Government misconduct was found to have occurred here during the search and seizure, as well as at the suppression hearing; there is no evidence – or allegation – that the government in any way caused Hinestrosa not to file a claim for the seized funds.

omitted)).   In *Rogers*, the plaintiff argued that his record should be expunged because his conviction was unconstitutional, as he had not been advised of his right to counsel.   The district court agreed that the conviction was unconstitutional, overturned the conviction, and ordered that the plaintiff's criminal record be expunged.   The Fifth Circuit reversed the portion of the district court's order that related to expungement, finding that the district court had gone too far, as the remedy "gave the defendant more relief than if he had been acquitted."   *Id*. at 1085.   The *Cavett* decision went on to explain that

> the *Rogers* holding prohibits a lower federal court from ordering the editing of public records in the general case.   Since Cavett has alleged no special circumstance that would take him out of the *Rogers* rule, the district court was clearly correct in dismissing Cavett's request for the expunction of public records.

*Id*.   Because there is no Eleventh Circuit decision regarding expungement of criminal records, this Court is bound by decisions of the Fifth Circuit made prior to the circuit split.[11] Relying on the holdings of *Rogers* and *Cavett*, therefore, this Court cannot expunge Hinestrosa's records absent "special circumstances."

Hinestrosa cites *United States v. Johnson*, 714 F. Supp. 522 (S.D. Fla. 1989) to support her position that expungement is appropriate in this case.   In *Johnson*, the district court noted that courts considering expungement have found it appropriate in five situations:

---

[11] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The first situation is when mass arrests render judicial determination of probable cause impossible. The second circumstance is present when a court determines that the sole purpose of the arrest was to harass the defendant. The third situation is where the police misused the police records to the detriment of the defendant. The fourth situation is where the arrest was proper but was based upon a statute later declared unconstitutional. The last situation arises when the expungement of criminal records is necessary to preserve basic legal rights.

*Id*. at 524 (citations omitted).

Hinestrosa offers two reasons why the record of her arrest in this case should be expunged. First, Hinestrosa states in her motion, "[h]ere, the government had approximately fifty-five (55) arrests on the same day. The judicial determination of probable cause on a case-by-case basis was impossible. Magistrate court was so overbooked that another magistrate had to come in to handle cases." (*Mot. Expunge* [DE 57] at p. 3). In its supplemental response to the motion, the government points out that "this statement appears to have been inadvertently taken from another pleading and 'does not appear to be applicable to Hinestrosa's case.'" (Government's Supplemental Memorandum on Motion for Expungement ("*Govt's Supp. to Expungement*") [DE 101] at p. 4 (quoting government's initial Response to Motion for Expungement [DE 59]).[12] Hinestrosa has not addressed the government's assertion that the "mass arrest" circumstance is not applicable to her case, thereby conceding its inapplicability.

---

[12] A review of Hinestrosa's motion makes it apparent that the facts as stated do not apply to Hinestrosa's case, likely the result of a cutting-and-pasting error. For example, Hinestrosa's attorney, a female, is referred to as "he," and the Defendant, Elsa Hinestrosa, also a female, is referred to as "him."

The only other argument Hinestrosa makes in favor of expungement is that she "predicts she will have tremendous difficulty getting new employment" if the record of her arrest is not expunged.  Hinestrosa offered this prediction in 2001 when she first filed her motion.  The motion lay dormant for eight years, and when it was referred to me I invited the parties to update the information in their pleadings; Hinestrosa chose to not supplement this motion, choosing rather to "stand on the authorities and argument contained in her original motion."  (Supplement to Motion to Expunge Criminal Record ("Supp. to Mot. Expunge") [DE 99]).  This Court can only infer that, fortunately, Hinestrosa's prediction did not come true.  And, even if the record of Hinestrosa's arrest on these charges did make it difficult for her to find employment, this would not amount to the special circumstances required to receive the extraordinary remedy of expungement, as virtually every person acquitted of a crime could raise the same concern.  Under the established precedent of *Rogers* and *Cavett*, then, Hinestrosa has failed to demonstrate that her situation warrants expungement.

In addition to the precedent in this circuit, other circuits in recent years have come out strongly against expungement.  In one line of cases, the First, Third, Eighth and Ninth Circuits have determined that, pursuant to the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (U.S. 1994), district courts do not have the jurisdiction to expunge criminal records on equitable grounds.  *See United States v. Coloian*, 480 F.3d 47, 50-52 (1st Cir. 2007) (collecting cases).  The Second, Seventh, Tenth and D.C. Circuits have held that there is no jurisdictional bar, but nonetheless have set forth exacting

standards for expungement. Those courts, like the Fifth Circuit, require exceptional circumstances to warrant expungement. *See, e.g.*, *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) ("expungement lies within the equitable discretion of the court, and relief usually is granted only in extreme circumstances"); *United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004) ("It is fair to say that our view of the balancing test is like that of other courts which have emphasized that expungement is an extraordinary remedy"); *United States v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975) ("the power to expunge an arrest record is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case"); *Livingston v. United States Dep't of Justice*, 759 F.2d 74, 78 n. 30 (D.C. Cir. 1985) ("Dismissal of the complaint, without more, will not justify expungement of the arrest record. Even individuals acquitted at trial are not entitled to expungement of their records 'as a matter of course'").

The mere fact that the complaint against Hinestrosa was dismissed does not entitle her to expungement of her record. Because she has failed to show any special circumstance to justify expungement, I recommend that Hinestrosa's motion to expunge be denied.

## C. Motion for Attorneys' Fees

Finally, Hinestrosa asks to have her attorney's fees paid by the government pursuant to the Hyde Amendment. The controlling case in this circuit on an award of fees under the Hyde Amendment remains *United States v. Gilbert*, 198 F.3d 1293 (11th Cir. 1999). The Hyde Amendment provides, in relevant part, as follows:

14

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act [Nov. 26, 1997], may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

Pub.L. No. 105-119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes); *see Gilbert*, 198 F.3d at 1298.

In *Gilbert*, the court engaged in an extensive analysis of both the plain language of the statute, and the legislative history behind the Hyde Amendment. It began by noting that because the terms "vexatious, frivolous, or in bad faith" are not defined in the statute, they must be given their ordinary meaning. *Id*. "Vexatious," the court explained, means "without reasonable or probable cause or excuse." *Id*. "Frivolous" is defined as "groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant." *Id*. at 1299. "Bad faith" is described as "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; … it contemplates a state of mind affirmatively operating with furtive design or ill will." *Id*. Considering the plain language of the statute, the court reasoned that to prevail under the Hyde Amendment, a defendant must show much more than that he or she prevailed on the merits of the case; rather, "[a] defendant must show that the government's position underlying the prosecution amounts to prosecutorial misconduct – a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous."

*Id*.

The court then examined the legislative history of the amendment, which reinforced the narrowness of the scope of relief implied by the plain meaning of the language. *Id*. The Eleventh Circuit concluded that, as finally drafted, the statute

> require[s] a criminal defendant seeking fees to show more than that the prosecution had been without foundation. The "more" a defendant would be required to show is reflected in the final language of the provision, as it was enacted into law, which provides that attorney fees may be awarded where "the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust."

*Id*. The court concluded that "[t]he plain language, reinforced by the legislative history of the provision, places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." *Id*. at 1302-03.

Hinestrosa claims she is entitled to attorneys' fees under the Hyde Amendment because of the government's misconduct during the investigation of the case. Hinestrosa was interrogated without having been provided *Miranda* warnings, agents lied to her about the benefits of cooperation, and then they lied under oath in court about what they had said to Hinestrosa. Hinestrosa argues that the government, knowing that agents had lied under oath, continued to pursue the case against her, and that taken together, these facts entitle her to recover her attorneys' fees. In support of her claim, Hinestrosa cites *United States v. Aisenberg*, 358 F.3d 1327 (11th Cir. 2004), as "strikingly similar" to the case at hand. *See*

16

[DE 98] at 2.

In *Aisenberg*, the government conceded that the defendant was entitled to an award of fees under the Hyde Amendment but challenged the amount of the award, and the Eleventh Circuit agreed that the award was too high. *Id*. at 1352. In its discussion, the court began by pointing out that:

> This circuit's prior Hyde Amendment decisions have dealt primarily with whether the prevailing federal criminal defendant carried his burden to show the required prerequisite to a fee award, to wit: that the United States' position was "vexatious, frivolous, or in bad faith." *See Adkinson*, 247 F.3d at 1293; *Gilbert*, 198 F.3d at 1297. In this case, however, the government conceded the applicability of the Hyde Amendment in the district court and that the Aisenbergs are entitled to recover their attorney's fees and expenses. This appeal requires us to determine only issues relating to the amount of the attorney's fees owed.

*Id*. at 1338-39. The court did not engage in any discussion or analysis as to whether Aisenberg was entitled to attorney's fees, as that had been agreed to; it considered only the three discrete issues relevant to the amount of fees. The Eleventh Circuit's decision in *Aisenberg*, thus has no precedential value on the issue of whether Hinestrosa is entitled to fees under the Hyde Amendment.

The lack of precedential value notwithstanding, *Aisenberg* is nonetheless illustrative of the type of case in which fees are awarded under the Hyde Amendment. In *Aisenberg* agents suspected a husband and wife of being responsible for the death of their missing child. The agents obtained a wiretap of the residence, and used statements gained from the wiretap, along with statements made by people who knew the couple, to indict the Aisenbergs. *Id*.

17

at 1332.  During the Aisenberg's initial appearance upon their arrest, an Assistant United States Attorney asserted that he had a taped statement in which Mr. Aisenberg said, "I wish I hadn't harmed her.  It was the cocaine."   The government also claimed to have taped statements that indicated that the Aisenbergs were drugged.  *Id*. at 1333.

During a motion to suppress, the magistrate judge made numerous findings in favor of suppression.  *Id*.  Notable among those findings were:  that in their initial wiretap application, the detectives made numerous false statements and omitted relevant facts; that the detectives made statements in the application that were in reckless disregard of the truth; that the detectives did not inform the judge signing the warrant that they were still waiting for the crime lab to process evidence; that in their extension applications, the detectives reported conversations that no reasonable person could claim to hear, as the recordings were largely unintelligible; that the detectives quoted conversations that did not appear anywhere on the transcripts of the recordings; that the detectives quoted or summarized conversations out of context with reckless disregard; that after redacting the unintelligible portions of the conversations, the applications for wiretap extensions did not support probable cause to believe that the Aisenbergs committed murder.  *Id*. at 1334.  After the magistrate judge's report on the motion to suppress was filed, the government immediately moved for leave to dismiss the indictment against the Aisenbergs, which the district court did.  *Id*.

Hinestrosa claims the facts of *Aisenberg* are close to those in her case.  She asserts that here, as in *Aisenberg*, law enforcement officials made false statements during the initial

phase of the investigation.  *See* [DE 98] at 2.  Hinestrosa also points to the similarity that here, as in *Aisenberg*, law enforcement "has deceived the Court regarding the contents of the statements that are contained in the recorded conversations."  *Id*.

The similarities relied upon by Hinestrosa do not render the cases even close to equivalent in terms of prosecutorial misconduct, or an entitlement to attorney's fees under the Hyde Amendment.  As the Eleventh Circuit explained in *Gilbert*, to win an award of fees under the Hyde Amendment, a defendant must show that the government's case was vexatious, frivolous, or in bad faith.  Put another way, a defendant who, pursuant to the Hyde Amendment bears the burden of proof, must show that "the government's position *underlying the prosecution* amounts to prosecutorial misconduct – a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous." 198 F.3d at 1299 (emphasis added).

In *Aisenberg*, the detectives engaged in the fabrication or distortion of evidence from the beginning of the case.  Neither the wiretap application itself, nor application for extension, were supported by probable cause.  Without the statements conjured up by the detectives, and taken out of context to create negative inferences, there was no probable cause for the arrest or indictment.  Moreover, the government effectively conceded the lack of probable cause when it asked that the charges be dismissed. That factual scenario is far different than what occurred in Hinestrosa's case.

Here, the district court judge did find that the government agents engaged in

misconduct.  *See* Transcript of Hearing, September 12, 2000 [DE 40, 41].  Specifically, agents did not advise Hinestrosa of her *Miranda* rights as they should have, and they made promises to Hinestrosa, that they later denied under oath, that her money would be returned and she would be free from prosecution, if she cooperated with them.

In contrast to *Aisenberg*, the agents' misconduct did not go to the heart of the government's case, and it did not undermine the probable cause that supported Hinestrosa's arrest and indictment.   The government's misconduct was fairly sanctioned when Hinestrosa's motion to suppress was granted, thereby excluding from evidence the statements she made to the agents.  Even without those statements, the government was prepared to go to trial, believing it had sufficient evidence, principally bank records, to prove her guilt.  The government did not, as in *Aisenberg*, move to dismiss the indictment against Hinestrosa after the motion to suppress was granted.  Instead, the district court dismissed the indictment, because it believed the government's decision to not call Agent Parks as a witness would unfairly prejudice Hinestrosa; the Court believed that this, taken together with the agents' misconduct, warranted dismissal.

The two-judge majority on the Court of Appeals upheld that dismissal in a somewhat summary fashion.[13]  However, a sharply worded dissent, that undertook a far more in depth

---

[13] The Honorable Rosemary Barkett wrote the majority opinion, joined by the Honorable Frank M. Hull.  The Honorable Stephen N. Limbaugh, District Judge sitting by designation, dissented.  After reviewing the record and the applicable legal standard, the majority opinion's analysis was limited to the following:  "Upon a review of the record and based on the totality of the circumstances here, we cannot say that the district court erred in dismissing the indictment under the facts here.  The record in this case adequately supports the misconduct and the prejudice required

analysis, came to the opposite conclusion: that the order of dismissal was not justified because the district did not find, and the record did not support a finding, that Hinestrosa had been prejudiced by the government misconduct.[14]  This strong and well reasoned difference of opinion regarding the significance of the misconduct highlights the difficulty here in concluding that the prosecution was "so utterly without foundation in law or fact as to be frivolous."  *Gilbert*, 198 F.3d at 1299.

Having failed to meet her burden under Eleventh Circuit standards, Hinestrosa is not entitled to an award of attorney's fees under the Hyde Amendment.  Accordingly, I recommend that her motion for fees be denied.

### III.  RECOMMENDATIONS

For the foregoing reasons, this Court respectfully recommends that:

1.      The government's Motion for Reconsideration [DE 56] be GRANTED.

2.      Hinestrosa's Motion to Expunge Record [DE 57] be DENIED.

3.      Hinestrosa's Motion for Attorney's Fees [DE 63] be DENIED.

### IV.  OBJECTIONS

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report

---

by O'Keefe." (*U.S. v. Hinestrosa*,  [DE 63], Ex. H, at p. 5) (citing *United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987)).

[14] The dissent concluded with this:  "Like the district court judge, the majority opinion glosses over the essential element of prejudice without articulating how Hinestrosa's defense of the currency reporting violations with which she was charged was in any way hampered by the only 'misconduct' found by the district court."  (*Id*. at p. 11-12).

and Recommendation with the Honorable Paul C. Huck within fourteen days of today.

Failure to timely file objections shall bar the parties from attacking on appeal any factual

findings contained herein.  *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th

Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida this 11th day of

August, 2010.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Paul C. Huck
Counsel of Record

22